IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


ROBERT E. FALCONE, M.D.,
F.A.C.S.,
                    Plaintiff,

        vs.                          Civil Action 2:08-CV-300
                                     Judge Marbley
                                     Magistrate Judge King

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY,

            Defendant.


                    OPINION AND ORDER

        This matter is before the Court on *Plaintiff Robert E. Falcone,*
*M.D., F.A.C.S.'s Motion to Compel Responses to His First Set of*
*Interrogatories and Requests for Production of Documents and Designate*
*a Deponent on the Topics Listed in a 30(b)(6) Notice* ("*Motion to*
*Compel*"), Doc. No. 16.  For the reasons that follow, the *Motion to*
*Compel* is **DENIED**.

I.    BACKGROUND

    A.    History of Plaintiff's Employment and Coverage

        Plaintiff seeks recovery under an income protection policy issued
by defendant, policy number 00479603 ("the Policy").  *Complaint*, ¶ 6,
Doc. No. 3.  In 1981, plaintiff completed his surgical residency and
joined Central Ohio Surgical Clinic, Inc. ("Surgical Clinic") as a
surgeon.  *Id.* at ¶ 8; *Affidavit of Charles E. Mitchell* ("*Mitchell*
*Aff.*"), ¶¶ 6-7, attached as Exhibit 2 to *Defendant Provident Life &*
*Accident Insurace* [sic] *Co. Notice of Removal* ("*Notice of Removal*"),
Doc. No. 2.  Surgical Clinic had previously entered into a Salary
Allotment Agreement with defendant, which established an employee

welfare benefit plan ("the Plan") and "provide[d] that premiums[1] for the insureds covered under the Plan will be paid by the employer under a common billing invoice." *Mitchell Aff.* ¶¶ 2-5. Premium policies were billed, as one group, to Surgical Clinic. *Id*. at ¶¶ 2-5. After receiving the common billing invoice, Surgical Clinic remitted one check to pay for these premiums. *Id*.

Plaintiff's Policy became effective July 1, 1981, and plaintiff represented to defendant that Surgical Clinic would pay the premiums on the Policy pursuant to the Salary Allotment Agreement. *Id.* at ¶¶ 6-7. When plaintiff's employment with Surgical Clinic ended in 1994 and premiums were no longer paid by his employer, however, defendant offered plaintiff the opportunity to continue the Policy "and retain the multi-life discount." Exhibit B, attached to *Mitchell Affidavit.* To accept this offer, plaintiff followed defendant's instructions and signed the offer letter and returned it along with a premium payment. *Id*.

Plaintiff continued to practice surgery until 1998. *Complaint*, ¶ 8. That year, plaintiff accepted an administrative position with OhioHealth. *Id*. at ¶¶ 8-9. Plaintiff "was allowed to continue his coverage with Provident at the same discounted premium he received as a participant in the [Surgical Clinic] Plan and he was not required to provide evidence of good health to continue his coverage." *Mitchell Aff.*, ¶ 8. From 1998 through May 15, 2006, and while employed in

---

[1]Defendant offers group discounts on its employer-sponsored disability plans. *Mitchell Aff.*, ¶ 2. In order to obtain this discount, "there must be at least three insureds of the same common employer and the employer must sponsor the Plan." *Id*. at ¶ 3. The Surgical Clinic's employee premiums received a 10 percent discount. *Id*. at ¶ 5.

administrative positions at OhioHealth, plaintiff paid 100% of his Policy premiums. *Complaint,* ¶¶ 9-10.

Plaintiff became president of Grant Medical Center, OhioHealth in 2003. *Id*. at ¶¶ 9, 32.[2] On September 24, 2005, plaintiff entered into an agreement with OhioHealth "that envisioned that his last day of employment would be January 1, 2006, and he would provide consulting services for six months thereafter." *Id*. at ¶ 32.[3] Due to difficulties in securing plaintiff's replacement, however, he remained employed as president of Grant Medical Center until his last day of work on May 15, 2006. *Id*. at ¶ 34.[4]

### B.  This Lawsuit

On January 28, 2006, plaintiff lacerated the first three fingers of his left hand while performing woodwork ("the accident"). *Id*. at ¶ 18. Since the accident, plaintiff is able to work as a hospital administrator, but is unable to perform duties as a surgeon. *Id*. at ¶¶ 20, 23-24. Apart from the consulting and salary continuation periods with OhioHealth, plaintiff has not held a full-time position since the accident. *Id*. at ¶ 38.

Following the accident, plaintiff requested coverage under the Policy. *Id*. at ¶¶ 39-48. Plaintiff complains that defendant

---

[2]This was an administrative position. *Id.*

[3]Plaintiff alleges that he intended to return to his occupation as a surgeon after the consulting period with OhioHealth ended. *Id*. at ¶¶ 36-37. Even though he served as an administrator and had not performed a surgical procedure since 1998, plaintiff passed written exams and was recertified in 2000. *Id*. at ¶¶ 26-29.

[4]"By agreement entered on August 29, 2006, the six-month consulting period was treating [sic] as having started on May 15, 2006, with a salary continuation period thereafter." *Id*. at ¶ 35.

improperly denied coverage based on its characterization of plaintiff's occupation as administrative, when it should have deemed plaintiff's occupation as surgeon. *Id.* at ¶¶ 51-88. On February 20, 2008, plaintiff filed a *Complaint* in the Franklin County Court of Common Pleas, asserting claims for breach of contract and bad faith denial of insurance coverage. *Id.* at ¶¶ 89-92.

On March 31, 2008, defendant removed this action to this Court. *See Notice of Removal.* In its removal filing, defendant argued that the action arose under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). *Id.* at ¶¶ 3-10.[5]

### C. Scope of Discovery and Discovery Dispute

During the initial pretrial conference, the Court determined that a threshold issue is the extent to which, if at all, ERISA applies to this case. *Preliminary Pretrial Order*, Doc. No. 11. The Court permitted the parties to conduct discovery on the limited issue of the applicability of ERISA, delaying merits discovery pending resolution of that issue.[6] *Id.*

Plaintiff served upon defendant interrogatories, requests for production of documents, requests for admission and a notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6). Exhibits A, B and C, attached to *Motion to Compel.* Defendant responded, objecting to

---

[5]Defendant also invoked this Court's diversity jurisdiction under 28 U.S.C. §1332. *Id.* at ¶¶ 11-12.

[6]The Court determined that, if ERISA does apply, "there will be no merits discovery and the issues will be resolved on the administrative record. If ERISA does not apply, the parties will engage in general merits discovery and the issues will be resolved by this Court *de novo.*" *Id.*

4

certain requests.  *Id*.  The parties subsequently communicated
regarding the requests and defendant's responses, but were unable to
resolve their dispute.  *See* Exhibit D, attached to *Motion to Compel*.
Accordingly, plaintiff filed his *Motion to Compel*.  On August 25,
2008, defendant filed its opposition to the *Motion to Compel*.
*Defendant Provident Life & Accident Insurance Co.'s Brief in*
*Opposition to Plaintiff's Motion to Compel Discovery Regarding ERISA*
*Applicability* ("*Memo. in Opp.*"), Doc. No. 17.  Plaintiff filed his
reply on August 27, 2008.  *Reply Memorandum in Support of Plaintiff*
*Robert E. Falcone, M.D., F.A.C.S.'s Motion to Compel Responses to His*
*First Set of Interrogatories and Requests for Production of Documents*
*and Designate a Deponent on the Topics Listed in a 30(b)(6) Notice*
("*Reply*"), Doc. No. 19.

## II.  STANDARD

Determining the proper scope of discovery falls within the broad
discretion of the trial court.  *Lewis v. ACB Business Services, Inc.*,
135 F.3d 389, 402 (6th Cir. 1998).  Rule 37 of the Federal Rules of
Civil Procedure authorizes a motion to compel discovery when:

> (ii) a corporation or other entity fails to make a
> designation under Rule 30(b)(6) or 31(a)(4);
>
> (iii) a party fails to answer an interrogatory submitted
> under Rule 33; or
>
> (iv) a party fails to . . . permit inspection--as requested
> under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B).  Rule 37(a) expressly provides that "an
evasive or incomplete disclosure, answer, or response is to be treated
as a failure to disclose, answer, or respond."  Fed. R. Civ. P.
37(a)(4).  In addition, a party "may move to determine the sufficiency

of an answer or objection" to a request for admission.  Fed. R. Civ.

P. 36(a)(6).  If the court determines that an answer does not comply

with Rule 36, "the court may order that the matter is admitted or that

an amended answer be served."  *Id*.  Unless the court finds an

objection to a discovery request justified, it must order that an

answer be served.  The burden of proof falls on the objecting party to

show in what respect the discovery request is improper.  *Trane Co. v.

Klutznick*, 87 F.R.D. 473 (D. Wis. 1980).

In general, discovery is not permitted in ERISA actions where

there has been a denial of benefits.  *See, e.g.*, *Wilkins v. Baptist

Healthcare System, Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman,

J., concurring).  However, a court may permit limited discovery on,

*inter alia,* the narrow issue of ERISA's applicability to the subject

plan or policy.  *See*, *e.g.*, *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 666

(2nd Cir. 1994) ("[T]he district court should allow further discovery

to enable the parties to augment the record [so that the court can

determine whether or not ERISA applies]"); *Stone v. Disability Mgmt.

Servs.*, 288 F. Supp. 2d 684, 687 (M.D. Pa. 2003) ("This Court then

issued an order permitting discovery limited to settling the issue of

whether ERISA governs the instant dispute or not."); *B-T Dissolution,

Inc. v. Provident Life & Accident Ins. Co.*, 101 F. Supp. 2d 930, 948

n.27 (S.D. Ohio 2000) ("[T]he Court allowed limited discovery on the

issue of whether the Plaintiffs' policies were part of an ERISA

plan").

## III.  APPLICATION

    **A.**    **Discovery concerning other policies since 1981 (First Set of
Interrogatories and Requests for Production of Documents,**

**Interrogatory No. 1 and Request for Production No. 3;**
**Defendant Provident Life & Accident Insurance Co.'s**
**Responses to Plaintiff's First Set of Requests for**
**Admissions Regarding ERISA Applicability, Request for**
**Admission No. 16)**[7]

Plaintiff first moves to compel defendant's answer to whether it

"issues policies covering individual income protection from accident

and/or disability that are provided as an employee welfare benefit

covered by ERISA[.]"  Interrogatory No. 1 ("Int. No. 1"), *Defendant*

*Provident Life & Accident Insurance Co.'s Responses to Plaintiff's*

*First Set of Interrogatories and Requests for Production of Documents*

*Regarding ERISA Applicability* ("*First Discovery Requests and*

*Responses*"), attached as Exhibit A to *Motion to Compel.*  If the answer

is affirmative, plaintiff would also move to compel production of "a

sample policy for each such policy Provident and/or its parent, Unum

Group, has issued since 1981."  *Id.*  *See also* Request for Production

No. 3 ("Request No. 3"), *First Discovery Requests and Responses*

(seeking production of sample policies since 1981 "that [have]

language defining and/or modifying 'occupation' and/or 'total

disability'"); Request for Admission No. 16, *Defendant Provident Life*

*& Accident Insurance Co.'s Responses to Plaintiff's First Set of*

*Requests for Admissions Regarding ERISA Applicability*, attached as

Exhibit B to *Motion to Compel* ("Admit that the general terms and

conditions of the individual disability insurance policy Plaintiff has

with Defendant are identical to those in the individual policies

Defendant offered to the public at the time Plaintiff first purchased

---

[7]The Court will address only the discovery requests specifically
referenced by plaintiff in the *Motion to Compel*: Int. Nos. 1, 6, 7 and 8;
Request for Production No. 3; and Request to Admit No. 16.  *Motion to Compel*,
pp. 3-4, nn.6-12

his individual policy.").

Both parties acknowledge that the United States Court of Appeals for the Sixth Circuit has established guidelines for determining whether or not a plan qualifies as an ERISA plan. *See Motion to Compel*, p. 6; *Memo. in Opp.*, pp. 2, 5-6; *Reply*, p. 5 (all citing *Thompson v. Am. Home Assurance*, 95 F.3d 429 (6th Cir. 1996)). Specifically, the Sixth Circuit has set forth a three-step factual inquiry for determining whether a plan is subject to ERISA:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. . . . Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." . . . Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Thompson*, 95 F.3d at 434-35 (citations omitted).

The parties dispute the scope of the term "surrounding circumstances" in the second step.[8] Plaintiff contends that consideration of "the surrounding circumstances" includes review of evidence extrinsic to the Plan and specifically other policies issued by defendant. Conversely, defendant argues that only evidence relating to the subject plan is relevant and that evidence regarding

---

[8]Other courts also consider "the surrounding circumstances" when determining whether ERISA applies to a particular plan. *See*, *e.g.*, *Guilbert v. Gardner*, 480 F.3d 140, 146 (2nd Cir. 2007); *Moorman v. Unum Provident Corp.*, 464 F.3d 1260, 1265 (11th Cir. 2006); *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1149 (9th Cir. 2000); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 932 (8th Cir. 1999); *Simeon v. AT&T Corp.*, 117 F.3d 1173, 1178 (10th Cir. 1997); *McDonald v. Provident Indemnity Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir. 1995); *Madonia v. Blue Cross Blue Shield*, 11 F.3d 444, 447 (4th Cir. 1993); *Smith v. Hartford Ins. Group*, 6 F.3d 131, 136 (3d Cir. 1993); *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.3d 1077, 1082 (1st Cir. 1990).

other policies is not germane to the issue of the applicability of ERISA. *Memo. in Opp.*, pp. 6-8 (citing *Mass. Casualty Ins. Co. v. Reynolds*, 113 F.3d 1450 (6th Cir. 1997); *Viechnicki v. UnumProvident Corp.*, No. 06-2460, 2007 U.S. Dist. LEXIS 8959 (E.D. Pa. Feb. 8, 2007); *Vincent v. Unum Provident Corp.*, No. 1:04-CV-340, 2005 U.S. Dist. LEXIS 9087 (E.D. Tenn. May 5, 2005); *Thompson v. Unum Life Ins. Co. of Am.*, No. 3:03-CV-0277-D, 1003 U.S. Dist. LEXIS 16716 (N.D. Tex. Sept. 13, 2003)[9]).

Interrogatory No. 1 and Request No. 3 seek information regarding policies other than the one at issue in this case, and copies of such policies, dating back to 1981; Request for Admission No. 16 also addresses other insurance policies from 1981. In support of these requests, plaintiff quotes *Thompson* and attempts to distinguish cases cited by defendant by arguing -- without explanation -- that they involved the "continuation" of a policy rather than an individual conversion policy. Plaintiff takes the position that defendant's theory, *i.e.,* that the Policy is subject to ERISA because it was once part of an ERISA-covered group plan, is without merit. *Reply*, pp. 5-6.

Plaintiff's argument is unpersuasive. Plaintiff points to no case where a court permitted discovery of other policies issued over the course of nearly three decades in order to determine whether "the surrounding circumstances" establish that ERISA governs a particular policy. Indeed, *Thompson* suggests that it is the particular plan or

---

[9]As evident by the citations, there are two cases referenced that have the name *Thompson*, one from the Sixth Circuit and one from the United States District Court from the Northern District of Texas.

policy at issue in this case that must be the focus of the inquiry. *Thompson*, 95 F.3d at 434-35 (referring to "a plan" or "the plan").

Only defendant cited to a case specifically addressing the scope of permissible discovery at this stage of proceedings. *See Thompson*, 2003 U.S. Dist. LEXIS 16716. In *Thompson*, the court determined that the defendant's "actual compliance with ERISA regulations is not a relevant area of inquiry with respect to the determination of whether or not the subject policy is an ERISA plan[.]" *Id*. at 12 (relying on *Jordan v. Reliable Life Ins. Co.*, 694 F. Supp. 822, 826-27 (N.D. Ala. 1988)). The district court therefore refused to compel response to the plaintiff's request for copies "of all policies and procedures governing ERISA appeals at Defendant Provident from the date it acquired an interest in or created a relationship with Defendant Unum through the present." *Id*.

Although, in this case, plaintiff's request seeks different policies, the request is equally broad. In addition, plaintiff provides no explanation for or authority demonstrating that the requested policies will assist in the determination of whether or not ERISA applies to the subject policy. Absent justification for such an expansive request, to grant plaintiff's request would unduly broaden the narrow scope of discovery at this stage of the proceedings.

Accordingly, plaintiffs' request to compel answer to Interrogatory No. 1, Request for Production No. 3 and Request for Admission No. 16 is **DENIED**.

**B. Discovery concerning defendant's internal criteria and categorization of its insurance policies (First Discovery Requests and Responses, Int. Nos. 6, 7 and 8)**

Plaintiff also asks that defendant be compelled to provide the "criteria" used by it "to distinguish an insurance policy it issues that is not covered by ERISA from one of its policies that is covered by ERISA." Int. No. 6, *First Discovery Requests and Responses*. Plaintiff also asks the Court to compel defendant to indicate whether defendant believes that its policies can or cannot be converted to a non-ERISA policy where that policy had once been covered by ERISA. Int. Nos. 7 and 8, *First Discovery Requests and Responses*. Defendant argues that "*the insurer's* characterization of and beliefs about the policy at issue are irrelevant." *Memo. in Opp.*, p. 5 (citing *Thompson*, 95 F.3d at 434-35) (emphasis in original). Plaintiff responds that the Sixth Circuit in *Thompson* "focuses on intrinsic evidence *because* an employer was directly involved in the plan under which benefits were sought. Provident has not identified an employer at bar for the period since Dr. Falcone accepted its offer, and there is no such employer." *Reply*, pp. 1-2 (emphasis in original).

Plaintiff's argument is unpersuasive and his attempt to distinguish *Thompson* is unavailing. Indeed, plaintiff points to no instance where a court permitted discovery of an insurer's internal criteria and categorization of its own policies. For these reasons, and for the reasons discussed *supra*, the Court concludes that plaintiff's requested discovery falls outside the scope of permissible discovery at this stage.

Accordingly, plaintiffs' request for an order compelling defendant to answer Interrogatory Nos. 6, 7 and 8 is **DENIED**.

**C.    Fed. R. Civ. P. 30(b)(6) Witness**

Plaintiff seeks to depose, pursuant to Rule 30(b)(6), a witness able to testify on the following topics:

1. The marketing plan Provident developed and/or followed in the early 1990's regarding selling insurance coverage to individuals who had been insured under an employers group health plan and were either no longer insured or about to be uninsured under the plan, including use of incentives such as group rates and waived premiums or health examinations to convince those individuals to purchase and/or continue their insurance.

2. The marketing plan Provident developed and/or followed in the early 1990's regarding selling insurance coverage to individuals who had never been insured under an employer's group health plan, including use of incentives such as group rates and waived premiums or health examinations to convince those individuals to purchase insurance.

3. The evolution of language in Provident accident and sickness insurance policies as the scope of ERISA regulation and preemption became apparent, including a summary plan description; conversion clauses; explicit discretion to interpret and administer the terms of the policies; designation of a plan administrator and/or a plan sponsor; formal amendment process; and express reference to ERISA and/or its procedures for internal appeals and judicial review of decisions to deny benefits.

4. The individual accident and sickness policies issued by Provident in the early 1990's.

5. The group accident and sickness insurance policies issued by Provident in the early 1990's, whether through an employer or to other groups, such as associations, clubs, and affinity groups.

6. The evolution of language in Provident's group accident and sickness insurance policies (including riders and salary allotment agreements) which (a) render the policy void upon an employee's termination; and/or (b) guarantee continuable coverage at guaranteed premiums.

Exhibit C, attached to *Motion to Compel*. As an initial matter, topics Nos. 4 and 5, which address policies from the early 1990's, are not appropriate discovery for the reasons discussed *supra*.

12

It is not immediately clear to the Court that the related topics Nos. 3 and 6, which address the "evolution of" and the "meaning and operation of" the language in defendant's accident and sickness insurance policies, assist in determining whether or not ERISA applies to the subject policy. Not only are these requests unbounded by any time frame, but there is no authority before the Court permitting this broad discovery on the narrow issue of ERISA's application in this case.

Similarly, plaintiff points to no authority justifying his request for the information contained in topics Nos. 1 and 2, regarding defendant's marketing plan developed and/or followed in the early 1990's. Plaintiff again fails to adequately explain how such discovery might shed light on whether ERISA applies to the subject policy.

Accordingly, as it relates to plaintiff's request to compel production of a Rule 30(b)(6) witness covering topics Nos. 1-6, plaintiff's motion is **DENIED**.

D.    **Two Documents Identified as Privileged**

Plaintiff also challenges defendant's refusal to produce two internal memoranda from defendant's claims file regarding the processing of plaintiff's claim. *Motion to Compel*, pp. 5, 9-12; *Memo. in Opp.*, pp. 9-11. Plaintiff argues that these documents "would permit Dr. Falcone to determine both whether the 'bad faith' he has alleged is reflected in the documentation and the bases for Provident's decision to reject his claim in light of the supplemental evidence and analysis he submitted." *Motion to Compel*, p. 10. Plaintiff contends that "only internal communications from Provident's

13

law department are involved" and that an *in camera* inspection by the Court is appropriate. *Id*. at 10-12. Plaintiff further contends that the "fiduciary exception"[10] to the attorney client privilege applies and suggests that, if *in camera* "review identifies internal memoranda setting out Provident's criteria and reasoning process along the path towards denial [of benefits], its role as a fiduciary and Dr. Falcone's viable allegation of bad faith justify disclosure." *Id*. at 12.

In response, defendant argues that plaintiff's attempt to compel the production of privileged documents is premature, noting that the merits of defendant's claim decision is not currently before the Court. *Memo. in Opp.*, pp. 9-11. In addition, defendant argues that the Court must first decide whether or not ERISA applies in order to determine the appropriate privilege analysis to apply to these documents. *Id.* In this regard, defendant contends that, if ERISA applies, the Court must apply the federal law of privilege; if ERISA does not apply, it is Ohio law regarding the attorney-client privilege that must be applied. *Id*. at 9-10.

Defendant's arguments are well-taken. First, the challenged documents relate to the merits of plaintiff's claims and fall outside the scope of current permissible discovery. Second, as defendant points out, the Court must determine whether or not ERISA applies to the subject policy in order to determine the appropriate law of

---

[10]"In the context of [ERISA], the fiduciary exception to the attorney/client privilege provides that 'an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration.'" *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (quoting *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997)).

privilege applicable to the case.  Plaintiff's request is, as defendant contends, premature.

Accordingly, plaintiffs' request for an order compelling defendant to produce the two internal memoranda identified on defendant's privilege log is **DENIED** at this time.  After the Court has determined the applicability of ERISA, plaintiff may, if otherwise appropriate, renew his motion in this regard.

### E. Request for Award of Fees and Costs

In his *Motion to Compel*, plaintiff also seeks an award of fees and costs incurred in connection with the motion.  Rule 37 of the Federal Rules of Civil Procedure requires the payment of expenses associated with the grant of a motion to compel unless the "opposing party's nondisclosure, response, or objection was substantially justified; or . . . other circumstances make an award of expenses unjust."  Rule 37(a)(5)(A)(ii), (iii).  As discussed *supra*, the *Motion to Compel* is denied.  Accordingly, plaintiff's request for attorney fees and costs is without merit.

**WHEREUPON**, *Plaintiff Robert E. Falcone, M.D., F.A.C.S.'s Motion to Compel Responses to His First Set of Interrogatories and Requests for Production of Documents and Designate a Deponent on the Topics Listed in a 30(b)(6) Notice* ("*Motion to Compel*"), Doc. No. 16, is **DENIED**.  Plaintiff's request for fees and costs is likewise **DENIED**.

October 23, 2008                    *s/Norah McCann King*
                                    Norah M$^c$Cann King
                              United States Magistrate Judge

15